Filed 5/21/19

**CERTIFIED FOR PUBLICATION**

**IN THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

**APPELLATE DIVISION**

| | |
|---|---|
| NASEEM HILALY, | ) Appeal No. CUD-17-658964 |
| | ) |
| Plaintiff and Appellant, | ) Case No. CUD-17-658964 |
| | ) |
| v. | ) |
| | ) **OPINION** |
| BETTY ROSE ALLEN, | ) |
| | ) |
| Defendant and Respondent. | ) |
| | ) |
| | ) |

APPEAL from a judgment of the Superior Court of San Francisco County, Richard B. Ulmer Jr., Judge. Affirmed.

Zachs, Freedman & Paterson, Andrew M. Zacks and Emily L. Brough for Plaintiff and Appellant.

Tenderloin Housing Clinic, Raquel Fox and Margaret DeMatteo for Defendant and Respondent.

OPINION

QUINN, J., Appellate Division

**INTRODUCTION**

This unlawful detainer appeal presents three issues. First, under the Ellis Act may an eligible elderly or disabled tenant defeat an owner's demand for possession of a residential rental unit by showing that the owner changed a term of the tenancy during the notice period? Second, is a completed residential rental questionnaire of the type used in this case an "instrument" under Evidence

1

Code section 622 such that the tenant is necessarily barred from asserting or proving facts arguably inconsistent with her questionnaire answers? Third, is the jury's verdict supported by substantial evidence?

We conclude that an eligible elderly or disabled tenant may defeat an owner's claim of possession under the Ellis Act by showing that the owner changed a tenancy term during the Act's notice period. Government Code section 7060.4 provides that an owner may gain possession of a residential rental unit only if: (1) she notifies the tenant of her intent to withdraw the unit; (2) she allows the tenant sufficient move out time, which is one year for an eligible elderly or disabled tenant; and (3) during the notice period, "the tenancy [is] continued on the same terms and conditions." A tenant "may assert by way of defense that the owner has not complied with the applicable provisions of this chapter." (Gov. Code, § 7060.6.) Thus, a tenant may defend against an Ellis Act eviction by showing that the owner unlawfully changed the terms of the tenancy. The Hilalys' arguments to the contrary, which are discussed in detail below, are unavailing. We, therefore, find that the trial court did not err in construing the Act to allow a "change-in-terms defense."

We also reject the claim that the trial court erred in allowing tenant's change-in-terms defense to proceed in light of her questionnaire answers. "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." (Evid. Code, § 622.) A writing that is a contract or "a binding confirmation of a lease agreement" is an instrument under section 622. Here, the questionnaire was not a contract. Tenant was not bound by contract to complete the questionnaire. And the questionnaire did not state that tenant's answers would be a binding confirmation of her leasehold. Thus, while tenant's answer of "no" to the question, "Parking included? Yes __ No __ If yes, space # ___" was relevant to the garage and driveway rights at issue, the trial court did not err in finding that tenant's answer did not bar her assertion that her leasehold included garage and driveway rights.

2

Finally, we have no trouble concluding that substantial evidence supports the jury's finding that tenant proved her change-in-terms defense. The evidence shows that tenant acquired and never transferred rights to use the garage and the right-side driveway. During the notice period, owners changed the terms of tenant's tenancy when they told her she could no longer park in or across the driveway. The jury's finding that owners unlawfully changed a term of tenant's tenancy is amply supported.

## STATEMENT OF FACTS

This appeal arises out of a residential eviction proceeding. Respondent Betty Rose Allen and her family moved into the apartment at 1642 Church Street in San Francisco in 1977. By way of an oral lease, they rented the apartment and a garage accessed by the right-side of a double driveway. The Allens parked their sedan in the garage. In the 1980s, the family was in a car accident and their sedan was totaled. They stored the inoperable sedan in the garage. Larry Gutierrez and his wife, Pamela, lived at 1644 Church Street almost as long as the Allens lived at 1642. "1642" and "1644" make up two of the three residential units on the subject parcel. Mr. Gutierrez had a very good relationship with his upstairs neighbors, the Allens. At some point after the Allens' car accident, Mr. Gutierrez asked if he could use their garage; in return, he would have their vehicle removed and clean up the garage space. Allen's mother agreed, telling Mr. Gutierrez that he could use the garage. (RT 1332:1-5.) Allen's family gave Mr. Gutierrez a key to the garage. Mr. Gutierrez removed the Allens' vehicle and cleaned the garage. Thereafter, Mr. Gutierrez stored his 1946 Chevrolet Stylemaster Business Coupe in the Allens' garage.

The Allens continued to use the garage to store personal belongings, such as a refrigerator and bicycles. The Allens occasionally used the right driveway for guest parking. In 2005 and after Allen's mother suffered a debilitating stroke, the Allens used the driveway for parking on a near-daily basis. They would notify Mr. Gutierrez when they would be using the driveway. When Mr. Gutierrez moved out, he returned the garage key to the Allens.

3

In the fall of 2014, the Allens' landlord put the three-unit property on the market. Apparently with a contract pending, a realtor for appellants Naseem and Naser[1] Hilaly provided a "Residential Rental Questionnaire" to the Allens and instructed them to complete it by 8:30 a.m. the next morning, when the realtor would return to collect the completed form. There's no evidence the realtor explained anything about the questionnaire. Allen started filling out the form, but she was confused by the form's wording: "Parking included? Yes __ No __ If yes, space # ___." Allen was unaware of any space numbers associated with the property. She telephoned a tenants' organization and was told to check the "no" box, as the "space #" query did not apply. The document did not inquire as to whether Allen's leasehold included garage or driveway rights. "When I read it out loud the expectation was," Allen explained, "did we have a space, did we have a number, and we had neither of that." Allen answered "no."

After handing the completed questionnaire to the realtor the next day, Allen heard nothing more about it. She was ready and willing to answer questions or provide clarifications. But neither the Hilalys nor any representative ever contacted her.

On November 25, 2014, the Hilalys closed on the purchase of the three-unit property. Upon purchase, Ms. Hilaly reviewed Allen's questionnaire answers. She believed the completed questionnaire to be an "estoppel certificate" detailing the terms of the lease for tenants living in 1642 Church Street. Ms. Hilaly's son, Tariq Hilaly, also reviewed these disclosures and understood them to be attestations of what each tenant's lease had and did not have. Tariq Hilaly relied on Allen's attestation that she had no parking, as well as Mr. Gutierrez's attestation that he had parking rights to the right garage. Tariq Hilaly found that these attestations matched his observation that Mr. Gutierrez had kept an antique car in the right garage. There is no evidence that Ms. Hilaly, her son Tariq or any

---

[1] Naser Hilaly passed away in 2018. The Appellate Division previously granted Naseem Hilaly's motion to proceed as his successor-in-interest on appeal.

4

one else in the Hilaly family ever talked to Allen or anyone in the Allen family regarding the questionnaire or their understanding of it.

After purchasing the property, Ms. Hilaly would park in the left-side garage when visiting her son, who moved into the third unit at the property—208 Valley Street. After Mr. Gutierrez moved out in May 2015, the Hilalys began using 1644 Church Street and the garage about a day a week.

In March 2016, the Hilalys decided to recover possession of 1642 Church Street to allow their daughter-in-law's mother, who was then living alone in India and in need of medical care, to move in. On May 6, 2016, the Hilalys issued an Ellis Act eviction notice to Allen. The notice indicated that Allen must move out by September 6, 2016; but, after Allen demonstrated that she was elderly and disabled, the move out date was extended to May 9, 2017.

On August 3, 2016, Allen organized a small party to celebrate her mother's birthday. She decided to call her mother's nurse after finding that her mother was unable to stay awake for the party. The nurse came to the Allens' home and conducted a medical examination. The nurse went to her car and came back in with a note that she found on her windshield. The note read, "I've told you not to park here again." The nurse told Allen that this was the first note she had received. The Hilalys never prohibited parking at that location prior to August 3, 2016.

The Allens allowed the medical team to park in front of their garage because their family had paid rent for the garage for decades. Allen testified that the medical team, veterinarian's staff, friends, or family would park in front of the garage at least once per day. Allen called the Hilalys' property manager, Devin Wong, and left a voicemail inquiring about the Hilalys' note. The same day, Mr. Wong emailed Allen, "Hi, Betty, I received your voicemail. You're not permitted to park and block the driveway. Thank you, Devin Wong." Allen later spoke to Mr. Wong, telling him that the medical team had always parked in the driveway. Mr. Wong replied, "No. You cannot have any parking in front of the house anymore. . . . The landlord would prefer that they don't do it."

5

The move out date associated with the Hilalys' Ellis Act notice—May 9, 2017—came and went without Allen surrendering possession of the apartment. On June 19, 2017, the Hilalys filed an Ellis Act unlawful detainer action against Allen, demanding possession of the apartment and leasehold. The matter proceeded to jury trial.

The Hilalys filed a trial motion to exclude any evidence of any change-in-terms defense based on a change in parking rights, arguing that Allen's questionnaire answers estopped her from asserting such change. The trial court denied this motion. The Hilalys later sought to instruct the jury on estoppel to refute Allen's change-in-terms defense. The trial court agreed to instruct the jury and noted that the parties previously stipulated that the estoppel issue would be submitted to the jury in an advisory capacity. The Hilalys also requested "a separate verdict form on the issue of estoppel so that your Honor would know what the jury is advising on." The trial court denied the Hilalys' last minute request, but allowed them to argue estoppel to the jury.

In their closing arguments, the Hilalys argued that they complied with the Act, they did not change any term or condition of Allen's tenancy during the notice period, the Allens' questionnaire answers barred them from claiming otherwise and possession of the apartment should be awarded to them. Allen argued, among other things, that the Hilalys changed a term of her tenancy during the notice period when they stripped her of garage and driveway rights and, therefore, the jury should not award possession to them. She also argued that her questionnaire answers were not determinative of her garage and driveway rights.

On Thursday, November 9, 2017, the jury returned its verdict. The jury found for the Hilalys on their claim for Ellis Act termination of Allen's month-to-month tenancy and against Allen on two defenses not relevant to this appeal. They found for Allen, however, on her defense that the Hilalys changed the terms of her tenancy during the notice period. The verdict form asked whether Allen proved that the Hilalys "[f]ailed to [c]omply [w]ith [r]ent [l]aw—[c]hange in [t]erms and [c]onditions of [t]enancy." The jury answered the question in the affirmative. Thus, the jury necessarily rejected

6

the Hilalys' estoppel argument. The verdict form went on to ask who should be awarded possession. The jury answered "Ms. Allen."

Following the verdict, the Hilalys insisted on an immediate judgment even though the estoppel issue was not yet resolved and the trial court obliged. The following Monday, the trial court entered judgment "in favor of [Allen] and against [the Hilalys], for possession of 1642 Church Street []." The court awarded costs to Allen and reserved jurisdiction for consideration of costs and any post-trial motions."

Two weeks later, the Hilalys filed motions for judgment notwithstanding the verdict and a new trial. Among other things, the Hilalys argued that the jury's verdict was without substantial evidentiary support. They again raised the estoppel argument. On December 22, 2017, the trial court issued a written order denying the motions. In its order denying those motions, the trial court found the estoppel unsupported by the record. The court reviewed the evidence and found as follows: "[H]ad [the Hilalys] requested court consideration of estoppel before the judgment was entered, I would have found that the trial evidence did not prove an estoppel. I make that same finding now, should anyone deem it necessary."

The Hilalys timely appealed from the judgment and the trial court's order denying their post-trial motions.

## DISCUSSION

The Hilalys argue that the trial court erred when it instructed the jury on Allen's change-in-terms defense. They argue that the trial court erred when it declined to give preclusive effect to Allen's questionnaire answers. And they argue that the jury's verdict awarding possession of the apartment to Allen is without substantial evidentiary support. Allen opposes each argument on the merits. She also contends that the Hilalys failed to preserve their preclusion claim or invited any error. We consider the arguments in turn.

7

**I.     THE PLAIN LANGUAGE OF THE ELLIS ACT ALLOWS AN ELIGIBLE ELDERLY OR DISABLED TENANT TO DEFEND AGAINST AN EVICTION BASED ON THE OWNER'S CHANGE IN TENANCY TERMS DURING THE NOTICE PERIOD.**

The Hilalys contend the trial court erred when it instructed the jury that Allen could defeat the Hilalys' claim of possession under the Ellis Act by showing that the Hilalys changed a tenancy term during the notice period.  The instruction was erroneous, they argue, because: (1) the Ellis Act does not provide for a change-in-terms defense to an eviction; (2) the defense is prohibited because it is collateral to the issue of possession; (3) the defense conflicts with the Act's legislative purpose to give owners an unfettered right to leave the residential rental business; and, (4) the defense contradicts the bar on the habitability defense to Ellis Act evictions.

The Hilalys' claim of error raises issues of statutory interpretation subject to de novo review. (*Mikkelsen v. Hansen* (2019) 31 Cal.App.5th 170, 178.)  "Our primary task 'interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]'  [Citation.]  We construe the statute's words in context harmonizing statutory provisions to avoid absurd results. [Citation.]  If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretive analysis."  (*California Building Industry Assn. v. State Water Resources Control Bd*. (2018) 4 Cal.5th 1032, 1041; accord, *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co*. (2018) 4 Cal.5th 1082, 1089.)  Where the language is clear, however, courts will not interpret away clear language in favor of an ambiguity that does not exist.  (*Scher v. Burke* (2017) 3 Cal.5th 136, 148.)

Prior to 1987, a number of rent control ordinances compelled rental property owners to stay in business by prohibiting the withdrawal of property from the rental market even if the property was operated at a loss.  In response, California enacted the Ellis Act (Gov. Code, § 7060 et. seq.) to protect property owners' rights to exit the residential rental business.  "The Ellis Act sets forth the procedure

by which a landlord may go out of business by removing rental units from the market." (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 589.)

Under the Act, local ordinances may require that the property owner advise the tenant of the owner's intent to withdraw their accommodations from the rental market. (Gov. Code, § 7060.4, subd. (a).) The City and County of San Francisco has enacted such laws. (San Francisco Rent Ord., § 37.9A.) The notice requirements are meaningful. Tenants must generally be given 120 days' notice of the owner's intent to withdraw. (Gov. Code, § 7060.4, subd. (b).) However, if the tenant is at least 62 years of age or disabled, and has lived in the accommodations for at least one year before delivery of the notice, the date of withdrawal of the tenant's accommodations "shall be extended one year" after the date of delivery of the notice, provided the tenant gives the owner written notice of his or her entitlement to the extension within 60 days of the date of delivery of the notice. (Gov. Code, § 7060.4, subd. (b).) In the event that the withdrawal period is extended, "[t]he tenancy shall be continued on the same terms and conditions as existed on the date of delivery to the public entity of the notice of intent to withdraw[.]" (Gov. Code, § 7060.4, subd. (b)(1).) Here, it is undisputed that Allen is over 62 years old and disabled, that she had lived at 1642 Church Street for years before the Hilalys delivered their notice and that she provided timely notice to this effect and that the one-year withdrawal period controls.

"If an owner seeks to displace a tenant or lessee from accommodations withdrawn from rent or lease pursuant to [the Ellis Act] by an unlawful detainer proceeding, the tenant or lessee may appear and answer or demur pursuant to Section 1170 of the Code of Civil Procedure *and may assert by way of defense that the owner has not complied with the applicable provisions of this chapter*[.]" (Gov. Code, § 7060.6, emphasis added.) "[T]his chapter" includes section 7060.4, subdivision (b)(1): "The tenancy shall be continued on the same terms and conditions as existed on the date of delivery to the public entity of the notice of intent to withdraw, subject to any adjustments otherwise available under the system of control."

9

Read together, section 7060.4, subdivision (b) and section 7060.6 plainly authorize a change-in-terms defense to an owner's claim of possession in an Ellis Act unlawful detainer action. Accordingly, we hold that under the Act an eligible elderly or disabled tenant may defeat an owner's claim of possession by proving that the owner improperly changed the terms or conditions of her tenancy during the notice period.

### a. The Change-in-Terms Defense to an Owner's Claim of Possession Is Set Out in the Act.

The Hilalys first argue that the Ellis Act does not recognize a change-in-terms defense to an unlawful detainer action. It is true that no published appellate authority has construed this statutory change-in-terms constraint. However, the Hilalys are incorrect in stating that the defense is not recognized by the Act. In fact, the defense is explicit in the Act.

The plain language of Government Code section 7060.4, subdivision (b)(1), states that, in the event that the notice period is extended for an eligible elderly or disabled tenant, "[t]he tenancy shall be continued on the same terms and conditions as existed on the date of delivery to the public entity of the notice of intent to withdraw[.]" Further, Government Code section 7060.6 provides that a tenant may assert a defense based on the owner's failure to comply with applicable provisions of the Act. By including these provisions, the Legislature clearly intended to prevent owners who impose new and less favorable tenancy terms during the notice period from being able to avail themselves of the Act's eviction provisions over the objection of an aggrieved elderly or disabled tenant.

Given the unambiguous plain language, we decline the Hilalys' invitation to scour isolated portions of the legislative history for an intent contrary to the one clearly articulated in the statute itself. The language of section 7060.4 reflects a clear legislative intent to protect elderly and disabled citizens, to provide a year of tenancy free of disruptive changes in the terms or conditions of the tenancy and to allow an aggrieved elderly or disabled tenant to defend against an eviction based on an owner's unlawful change in terms.

10

**b.    The Legislature's Change-in-Terms Defense Is Not Extrinsic to Issue of Possession.**

The Hilalys argue that non-Act unlawful detainer defenses are limited to matters intrinsic to the issue of possession and that the change-in-terms defense should be barred because it is not sufficiently connected to a tenant's right to possession.  The Legislature, however, has provided otherwise.

The Hilalys are correct that unlawful detainer defenses are generally limited to those which, if proven, would maintain the defendant's right to possession.  (*Green v. Superior Court* (1974) 10 Cal.3d 616, 633.)  This makes sense because unlawful detainers actions are principally about possession. (*Hudec v. Robertson* (1989) 210 Cal.App.3d 1156, 1163.)  But it does not follow that Allen's change-in-terms defense is barred.  The defense is set out in the legislation and nothing in *Green* suggests that the Legislature is precluded from allowing any reasonable defense it deems appropriate.  The Hilalys summarily assert that the garage and driveway rights at issue are "plainly 'extrinsic to the narrow issue of possession[.]'"  As a general matter, parking is coveted in San Francisco and a parking term of tenancy is material and intrinsic to a leasehold.  Specifically, Allen's garage and driveway rights allowed her to park the family car for years, spread good will with her former neighbor and facilitated her mother's home care after her stroke.  The jury found that the Hilalys changed the terms of Allen's tenancy when they stripped her of rights over the garage and driveway.  The Legislature was well within its discretion to provide for a change-in-terms defense in an Ellis Act unlawful detainer proceeding such that an owner's unlawful change in terms during the notice period may preclude the owner from gaining possession of the property at issue.  The Hilalys' change in terms was sufficiently connected to Allen's possessory rights to justify its invocation as a defense in this unlawful detainer action.

**c. The Defense Does Not Conflict with the Legislative Purpose of the Ellis Act or the Act's Individual Provisions.**

The Hilalys argue that the defense conflicts with the Ellis Act's purpose to give the owner the unfettered right to leave the residential rental business. Their sweeping interpretation of the Act is unsupported by the law.

The Act confers upon property owners the right to leave the residential rental business unfettered *not* by all laws, but by local laws contrary to the Act. (Gov. Code, § 7060.) To avail themselves of the right to evict under the Act, owners must comply with the requirements of the Act, as well as any local ordinances not in conflict. (Gov. Code, § 7060.7; see *Drouet*, *supra*, 31 Cal.4th at p. 591; *Johnson v. City and County of San Francisco* (2006) 137 Cal.App.4th 7, 13.) For example, an owner must give proper notice. An owner must have a bona fide intent to get out of the rental business. And, in the context of a case such as ours, an owner must allow elderly and disabled tenants' existing terms and conditions to stand during the one-year notice period.

An owner's "unfettered" right to leave the residential rental business is not intended to overrule procedural and substantive protections designed to prevent abuse of the right to evict tenants. (See Gov. Code, § 7060.70, subd. (c).) One such protection is to allow an eligible elderly or disabled tenant to defeat an owner's claim of possession by proving that the owner improperly changed the terms of her tenancy during the notice period. (See Gov. Code, §§ 7060.4, subd. (b)(1) and 7060.6.) Nothing about this approach controverts the general purpose of the Ellis Act or any individual provision of the Act.

**d. The Defense Does Not Contradict the Bar Against Habitability Defenses in Ellis Act Unlawful Detainer Proceedings.**

The Hilalys argue that a change-in-terms defense contradicts settled law barring habitability defenses to Ellis Act evictions and that recognizing the defense will lead to absurd results. We see neither contradiction nor absurdity.

The law is clear that a tenant may defeat an eviction for non-payment of rent, for example, by showing that the owner has breached the warranty of habitability. (See Civ. Code, § 1942.4, subd. (a)(1); see also Code Civ. Proc., § 1174.2, subd. (a).) A tenant, however, may not defeat an Ellis Act eviction by showing that her apartment is untenantable. (*Id*.) From the fact that an owner seeking to withdraw rental property under the Ellis Act has no obligation to maintain the tenantability of the premises for purposes of a claim of possession it does not follow that an owner seeking to remove a unit from the market is free to take any and all action against a tenant or their leasehold. By section 7060.4, subdivision (b)(1), the Legislature required that a withdrawing owner seeking to evict an elderly or disabled tenant under the Act must continue the tenancy on the terms and conditions prevailing at the time of notice and, by section 7060.6, the Legislature instructed that an aggrieved tenant "may assert by way of defense that the owner has not complied with the applicable provisions of this chapter," such provisions including the no-change mandate. In the Ellis Act, the Legislature essentially drew a "do no harm" line: For purposes of possession rights under the Act, an owner withdrawing a unit is relieved of affirmative repair responsibilities, but also must refrain from taking affirmative steps to reduce an elderly or disabled tenant's leasehold during the notice period. These straightforward directives are internally consistent and wholly reasonable.

The Hilalys argue that allowing the defense "would result in the following absurd scenario: (1) if such an alleged change in the terms of tenancy was so great that it affected the tenantability or habitability of a property, then such a defense would be precluded; but (2) the further away from habitability the change in terms is, the more likely such change would serve to bar a landlord's possession." The Hilalys' concerns are misplaced.

The Legislature has instructed that an owner seeking to avail themselves of Ellis Act eviction rights must comply with relevant statutory duties. (Gov. Code, § 7060.6.) In the context of this case, those duties include forgoing changes to the terms during the one-year period. The Legislature may have reasonably decided to relieve owners from affirmative repair responsibilities for purposes of

13

possession rights under the Act, while holding them to a requirement that they take no affirmative step to reduce an elderly or disabled tenant's leasehold during the notice period. Again, it is a legislative directive to do no harm.

The Hilalys' contention may have more appeal, for example, in a case where an elderly tenant facing an unlawful detainer under the Ellis Act alleges a changed condition based on a lack of heat—which could sound like a habitability defense. But even here, the outcome would depend on the record. The allegations or evidence may demonstrate that the broken furnace was a habitability issue, not a change in terms, and the tenant's defense to the owner's claim of possession may not survive pre-trial motions or may be rejected by the jury. On the other hand, the particular circumstances may, as here, present a factual issue to be decided at trial. For example, if the evidence shows that the owner disabled the furnace during the notice period, then the trier of fact could reasonably find that the owner unlawfully changed the terms of the tenancy and award possession to the tenant. We conclude that where the changed condition is attributable to the owner's affirmative conduct in taking away a right of tenancy, there is nothing absurd about denying the owner's demand for possession, even if the owner is excused from an obligation to maintain habitability for purposes of possession.

## II. ALLEN WAS NOT ESTOPPED FROM CLAIMING A CHANGE OF GARAGE AND DRIVEWAY RIGHTS.

The Hilalys claim the trial court erred in finding that Allen's questionnaire answers did not bar her claim that her leasehold included garage or driveway rights. They argue that the questionnaire answers amount to an "estoppel certificate," or an "instrument" presumed to be true under Evidence Code section 622 and, thus, Allen was barred from asserting facts arguably at odds with her answers, which included a statement that she had no parking. Allen argues that the Hilalys forfeited this claim and that the argument fails on the merits.

Generally, a trial court's evidentiary rulings are reviewed for abuse of discretion. (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 683.)

14

Here, the evidentiary ruling came in the context of an estoppel determination made in equity and equitable rulings, too, are reviewed for abuse of discretion. (*De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315.) Under abuse of discretion review, factual determinations are reviewed for substantial evidence and legal determinations are reviewed de novo. (*Verizon California Inc. v. Board of Equalization* (2014) 230 Cal.App.4th 666, 680.)

### a. The Hilalys Preserved Their Estoppel Claim.

Allen contends that the Hilalys forfeited this claim of error and their claim is barred by the doctrine of invited error. Neither contention is supported by the record.

The Hilalys did not forfeit this claim. They filed a trial motion "to exclude evidence of changes to terms and conditions of tenancy." They sought to exclude this evidence on multiple grounds, including that Allen's questionnaire answers barred her from claiming that her leasehold included parking. The Hilalys preserved the issue.

Allen's invited error argument is less than clear, but it appears the argument is based on the Hilalys' failure to request that the judge, rather than the jury, decide the estoppel issue. After their motion to exclude Allen's evidence of garage and driveway rights failed, the Hilalys did request an estoppel instruction for the jury, but it was understood that the jury's opinion would be advisory. After the trial court agreed to instruct on estoppel, and moments before the judge was set to instruct, the Hilalys requested "a separate verdict form on the issue of estoppel so that your Honor would know what the jury is advising on." The trial court denied that last minute request, but allowed the Hilalys to argue estoppel to the jury. The jury's verdict indicates that they rejected the estoppel claim. The Hilalys raised the issue in their post-verdict briefing. The trial court considered the estoppel contention and rejected it. On these facts, there is no invited error.

The Hilalys preserved their estoppel claim.

15

**b.      The Trial Court Did Not Err in Finding that Allen's Questionnaire Answers Did Not Estop Her from Claiming Garage and Driveway Rights.**

"The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." (Evid. Code, § 622.)  Not every writing is considered an "instrument" under Evidence Code section 622.  As used in section 622, an "instrument" usually refers to a contract, but may apply to contract-like writings, such as a commercial estoppel certificate that all parties understand is "a binding confirmation of a lease agreement." (*Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 626.)

Here, the trial court was right in finding that Allen's questionnaire answers were not a binding instrument under section 622.  The questionnaire was not a contract—it involved no consent or sufficient cause or consideration.  (See Civ. Code, § 1550 [contract requires parties capable of contracting, consent, lawful object and sufficient cause or consideration.].)  Our review of the record reveals that the Hilalys made no effort to prove the questionnaire answers constituted a contract.  The circumstances under which Allen completed the questionnaire do not compel a finding that the completed questionnaire was an instrument.  Allen was not under a contractual obligation to complete the questionnaire.  The questionnaire did not clearly state that it was a binding confirmation of Allen's leasehold rights.  No one advised Allen of any direct link between her answers and her leasehold.  No one told her that she would be giving up any claims not recorded by her answers.  And nothing about Allen's leasing relationship with her landlord suggested that her answers would be a binding confirmation of her leasehold.

In fact, for nearly 40 years, Allen's lease arrangement with the owner was oral, nothing was in writing and the questionnaire did not provide that it would convert that arrangement to a writing to the extent that Allen's answers limited her leasehold.  Allen had only hours to complete the questionnaire.  She was sufficiently perplexed by the questions that she felt it necessary to call a tenants' rights group

to assist her. She completed the form as she did based on the advice of the tenants' rights assistant, understanding the document to ask whether she had a "space" or "number" for parking, which she did not. The document did not inquire as to whether Allen had a garage or driveway rights. No one ever asked Allen to clarify the statements she made on the document.

Accepting as true the Hilalys' evidence that they believed Allen's answers to be binding does not change the analysis. A real estate agent, not the Hilalys, gave Allen the questionnaire and directed her to complete it. At the time, Allen and the Hilalys had no relationship and neither owed the other any cognizable duties. The Hilalys' understanding of Allen's answers is not particularly probative of whether Allen's answers should be understood to be binding statements regarding her contractual leasehold rights.

The Hilalys cite *Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616. In *Plaza Freeway,* the court held that an estoppel certificate in a commercial setting is an "instrument" under Evidence Code section 622 that binds the tenant as to their factual statements. (*Id.* at p. 626.) The so-called estoppel certificate bears a resemblance to the rental questionnaire, but there are significant differences. Ultimately, however, the holding in *Plaza Freeway* is based on policy considerations and facts specific to the commercial context. Estoppel certificates are widely used in the commercial context, and commercial tenants are generally bound to complete them. (*Id.* at pp. 628-29.) Commercial parties – lenders, buyers, sellers and tenants – share a widespread understanding that estoppel certificates are binding and will be relied upon. (*Id.* at p. 629.) It is also true that parties to a commercial lease tend to be sophisticated and are more likely to have equal bargaining power. (See *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 84-85, quoting *Schulman v. Vera* (1980) 108 Cal.App.3d 552, 561 ["[C]ourts acknowledge that due to the 'unequal bargaining power [between] landlord and tenant resulting from the scarcity of adequate housing in urban areas,' tenants in urban residential leases are treated more favorably by courts than lessees in commercial leases where the

17

'parties are more likely to have equal bargaining power.'"].) None of these circumstances are common in the residential leasing context. Nor do they exist in this case.

Here, Allen had no contractual duty to complete the questionnaire. The parties indicated no shared understanding, discussions or advisement of the questionnaire's binding nature. The questionnaire contained no express statement that the tenant would be bound by the assertions made in the questionnaire. The questionnaire was ambiguous on relevant terms, indicating that it was not the sort of communication that would lead to binding statements regarding terms and conditions of tenancy. And the record contains no indication that all parties were highly sophisticated or enjoyed similar bargaining power.

The Hilalys have not cited—and we have not found—a single case in which a reviewing court upholds a finding that under section 622 a residential tenant's questionnaire amounts to an estoppel certificate against the tenant. This is consistent with the judicial acknowledgement that residential and commercial tenancies are different. (*Boston LLC*, *supra*, 245 Cal.App.4th at pp. 84-85.) Commonly, in the context of residential questionnaires, the parties' sophistication and bargaining power are uneven. The questionnaire itself is not a contract and residential tenants are under no contractual obligation to complete such a questionnaire. The questionnaire does not clearly state that it is a binding confirmation of the tenant's lease rights and the tenant is not clearly so advised. The tenant completes the questionnaire in short order and without the careful thought that would normally go into consideration of the totality of one's leasehold interest, often without time to seek meaningful input from experts or professionals. The questionnaire is vague on many points and there is little opportunity for clarification or discussion. We decline to extend the holding of *Plaza Freeway* to the vastly different context of the residential tenant's questionnaire presented here.

Even if a residential questionnaire such as the one at issue here could be deemed an estoppel certificate, the Hilalys' claim of error would still fail. In this case, the trial court reasonably found Allen's statement that she did not have parking in the form of a numbered parking space did not bar

18

her from asserting (and proving) that her leasehold included garage and driveway rights. There is nothing necessarily inconsistent in a tenant maintaining that a leasehold did not include a numbered parking space, but it did include garage and driveway rights. If the Hilalys truly wanted a binding confirmation of Allen's garage and driveway rights, they could have asked for that specific information, they could have provided clear direction and they could have followed up directly with Allen. Instead, they used an inapt form designed for a large apartment complex and, as a result, they received responses of limited value. Assuming the trial court resolved relevant factual disputes, including the disputes between Allen's and Mr. Gutierrez's testimony, against an estoppel (as the jury apparently did) and considering the undisputed evidence on the garage and driveway rights and the questionnaire, the trial court was within its rights in finding that Allen's questionnaire answers did not bar her from asserting garage and driveway rights.

To be sure, Allen's answers were probative on the parking issue and, not surprisingly, the trial court admitted the answers and the parties argued their significance. But the trial court did not err in finding that Allen's answer did not preclude her from asserting that her leasehold included garage and driveway rights. In any event, Allen's assertion that her leasehold included garage and driveway rights was not inconsistent with her answers such that the latter necessarily barred the former. Accordingly, we affirm the trial court's finding that Allen was not estopped from asserting a change in terms as a defense to the Hilalys' Ellis Act unlawful detainer action.

III. **THE RECORD CONTAINS SUBSTANTIAL EVIDENCE THAT THE HILALYS CHANGED THE TERMS OF ALLEN'S TENANCY DURING THE ELLIS ACT NOTICE PERIOD.**

Finally, the Hilalys argue that even if the Ellis Act provides for a change-in-terms defense and Allen was not barred from asserting a change in terms, the verdict must still be reversed because it is not supported by substantial evidence. The record belies the claim.

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to

whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination." (*Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116, 1132.) "If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Id*.)

Viewed in the light most favorable to the verdict, the record supports the jury's findings. Allen acquired a right to use of the garage and right-side driveway in 1977. She never "transferred" those rights. The Hilalys changed the terms of her tenancy when they told her she could no longer park there. The note read: "I've told you not to park here again." The Hilalys' property manager's email read "You're not permitted to park and block the driveway." Later, the manager confirmed, "You cannot have any parking in front of the house anymore." In other words, Allen's rights had changed. A reasonable jury could find that by denying all access to the garage and right-side driveway the Hilalys changed a condition of Allen's tenancy and, due to the unlawful change, award possession to Allen.

The Hilalys argue that at most their conduct could support only a finding that they breached the terms of Allen's tenancy, but no reasonable trier of fact could find that they changed the tenancy terms. The argument misses the mark. The permissible inferences were not limited to a finding that the Hilalys breached a right (e.g., momentarily usurped Allen's right to use the garage and driveway); they extended to an inference that the Hilalys changed the terms of Allen's tenancy by taking away her garage and driveway rights. Substantial evidence supports the jury's finding that the relevant communications by the Hilalys to Allen constituted a new rule that Allen was no longer allowed to use the right garage or driveway and this new rule amounted to a change in terms that defeated the Hilalys' claim of possession.

Nor is there any risk that the jury confused the notions of an incidental breach and a change, as the Hilalys suggest. The instructions referred to "change" in terms. Counsel argued change/no change

20

in terms. The verdict form made no reference to an incidental breach, but asked specifically whether Allen proved that the Hilalys "[f]ailed to [c]omply [w]ith [r]ent [l]aw—[c]hange in [t]erms and [c]onditions of [t]enancy." The jury answered this question in the affirmative. The verdict form went on to ask who should be awarded possession and the jury answered "Ms. Allen." We have no doubt the jury found that the Hilalys unlawfully changed the terms of Allen's tenancy and, on that basis, awarded possession of the apartment to Allen.

The Hilalys argue that there is no substantial evidence that they changed the terms of Allen's tenancy during the notice period. Any change in leasehold rights, the Hilalys contend, occurred prior to their invocation of the Ellis Act.[2] On this record, the jury could reasonably have found that the Hilalys changed Allen's garage and driveway rights during the notice period. The Hilalys left their note on the caretaker's car during the notice period. And during the period, the Hilalys' property manager informed Allen that she could not park in front of the garage "anymore." Both of these commands reasonably indicate that the Hilalys had announced a new rule, and that Allen's garage and driveway rights had been effectively changed. The jury was not compelled to find—and apparently rejected a finding to the effect—that the Hilalys' weekly use of the left garage demonstrated a pre-notice change in tenancy terms. Viewing the evidence in the light most favorable to the nonmoving party, substantial evidence supports the jury's finding that the Hilalys changed the terms of Allen's tenancy during the notice period.

## CONCLUSION

In sum, the trial court's instruction regarding the change-in-terms defense to an Ellis Act eviction was proper. The trial court's finding that Allen was not estopped from claiming a change of

_____

[2] Allen contends that the Hilalys are arguing that any change-in-terms defense can cover only the "extended" withdrawal period, i.e., from day 121 to 365, but not the initial withdrawal period from day 1 to 120. Although the Hilalys made a similar argument at trial, they do not make this argument on appeal. Likely, for good reason: By the plain language of section 7060.4, subdivision (b)(1), the no-change constraint applies from the date of delivery to the public entity of the notice of intent to withdraw until the end of the elderly or disabled tenant's tenancy.

parking terms was proper. And the record contains substantial evidence that the Hilalys changed Allen's terms of tenancy during the Ellis Act notice period. This finding supports the jury's award of possession of the apartment to Allen. The trial court's judgment is, therefore, AFFIRMED.

DATE: May 20, 2019

_____

Joseph M. Quinn, Associate Judge

WE CONCUR.

HITE, Acting P. J., Appellate Division

EAST, J., Appellate Division

_____

Christopher C. Hite, Acting Presiding Judge

_____

Rochelle C. East, Associate Judge