Filed 11/06/25

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| ARIEL GONZALEZ, | ) 24APLC00150 |
| Plaintiff and Respondent, | ) (Stanley Mosk Trial Court No. 23STUD13545) |
| v. | ) |
| MARIA BOLANOS, | ) **OPINION** |
| Defendant and Appellant. | ) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ian C. Fusselman, Judge. Affirmed.

BASTA, Inc., Daniel J. Bramzon and Eric M. Post for Defendant and Appellant.

Dennis P. Block & Associates and Dennis P. Block for Plaintiff and Respondent.

\*         \*         \*

1

This is an appeal by defendant Maria Bolanos from the judgment entered in favor of plaintiff Ariel Gonzalez, following an unlawful detainer jury trial prosecuted on the theory that defendant failed to comply with a three-day notice to perform convenants or quit. Defendant contends the three-day notice was facially defective in various respects; the alleged breach of lease covenant was immaterial as a matter of law due to plaintiff suffering no actual injury, and there is no substantial evidence to support the jury's special verdict finding that the breach of lease was material. Additionally, defendant challenges the sufficiency of the evidence with respect to her affirmative defense of waiver, and complains the court committed prejudicial instructional error. As explained below, we affirm the judgment.

BACKGROUND

The complaint filed on October 17, 2023[1] alleged that plaintiff was the owner of the premises and that defendant became a tenant on or about July 1, 1996, pursuant to a written lease agreement which required her to pay rent of $926 per month. The property is subject to the Los Angeles Rent Stabilization Ordinance (LARSO). On October 6, plaintiff caused defendants to be served with a three-day notice to perform covenants or quit the premises; and, as of October 11, defendant did not comply after expiration of the notice period. The complaint demanded forfeiture of the lease, damages and contractual attorney fees.

The three-day notice to perform covenants or quit the premises stated: "You are hereby notified that pursuant to the rental contract or law under which you hold possession of the described premises, there is a violation or breach of said agreement or law in the following manner: [¶] Pursuant to the terms of the lease agreement[2] the tenant shall not violate any City Law. On August 16, . . . the [LAHD] issued a Notice and Order to Comply. The order stated that you were in violation of a City law by storing personal property in your garage and that you were blocking the pathway to and from the garage. [¶] Within the 3 days stated herein, you must remove your personal property storage from the garage, as it is only for the parking of a

_____

[1] All further date references are to the year 2023 unless otherwise designated.

[2] The referenced clause in the lease provides that "Lessee shall not violate any city ordinance or state law in or about said premises."

2

vehicle. [¶] In addition, within the 3 days stated herein you must remove your vehicles so that it is not blocking the pathway. [*Sic*.] The pathway must remain free and clear. [¶] Witness: Jose Zepeda and Ariel Gonzalez."

Defendant's answer denied each adverse allegation in the complaint and asserted multiple affirmative defenses, including no material breach of covenant, waiver, and violations of LARSO. The cause proceeded to a trial by jury. Plaintiff introduced into evidence the lease, Notice and Order to comply, three-day notice, and photographs depicting the garage and a pathway to and from the garage. Plaintiff's witnesses included herself, Mike Melendez,[3] Zepeda, Souren Safrazbekin, and defendant who was called pursuant to Evidence Code section 776. The defense witnesses were defendant and plaintiff who was called pursuant to Evidence Code section 776. The defense introduced into evidence photographs depicting the front of the house, a cement mixer, the garage, and the driveway. The pertinent trial testimony follows.

Plaintiff purchased the subject property in 2016, subject to the existing lease agreement with defendant. The premises consist of a duplex with a front-right unit occupied by defendant, her daughter (Lourdes), and her son-in-law.[4] The rent was $926 per month. The front left unit was occupied by another tenant whose rent was $2,300. Behind the duplex there is a separate one-bedroom unit that is occupied by plaintiff's son. Between the units is a shared driveway that leads to a shared garage. The lease entitles defendant to the use of the right side of the garage space and plaintiff uses the left side of the garage for storage. The property was registered with the LAHD, and plaintiff posted the 2023 LARSO certificate and related tenant notices on the property.

Zepeda is a housing inspector for the LAHD who investigated the conditions underlying this case, along with the 2022 inquiry discussed in footnote 4, *ante*. On or about July 10, the

---

[3] Melendez is a registered process server who served defendant with the three-day notice to perform covenants or quit. Service of the notice is not challenged on appeal.

[4] Plaintiff's previous attempt to evict Lourdes and defendant's son-in-law as unauthorized occupants was unsuccessful. In 2022, plaintiff spent thousands of dollars renovating defendant's unit after receiving a citation from the LAHD following a complaint submitted by defendant.

LAHD received a complaint from an unknown source concerning vehicles blocking the shared driveway.[5] Zepeda reviewed the complaint and visited the property on July 19. Zepeda observed several city ordinance violations, including oil stains on the driveway, a cementer mixer and tools stored in the exterior common areas, and a significant amount of personal property being improperly stored on top of structural wooden two-by-four planks on the right side of the garage. The wood was warping due to the weight of the items being stored on it. This condition violated a city ordinance and posed a safety risk as the wood may eventually cave in, and the structure could collapse.

There were no vehicles blocking the driveway when Zepeda visited the property, but he had previously observed vehicles improperly parked on the driveway. According to Zepeda, a shared driveway for a multi-unit residential property must remain clear to allow for escape in case of an emergency, and to allow emergency personnel to access the property. Zepeda spoke with plaintiff and defendant about the violations he observed. Defendant told Zepeda that the personal property being stored in the garage belonged to her. Zepeda advised defendant the conditions violated the city code and explained the garage shelving "wasn't designed to carry the weight that was up there because . . . the supports were spaced out too far and they weren't designed to carry any load."

On or about August 16, Zepeda issued a Notice and Order to Comply, which was not designated to be included in the record. The Notice listed the ordinance violations and demanded removal of oil stains and open storage in the driveway, the cars blocking the driveway, trash cans being used for open storage, and improper storage of personal property in the garage. The Notice and Order to Comply was posted at the property and defendant was given a copy. Compliance with the notice was due in September 2023.

Plaintiff testified that the cars blocking the driveway belonged to defendant. Defendant testified the cars belonged to her son-in-law, and they had been parked in the driveway since 1996 without any reported problems. The personal property stored in the right side of the

_____

[5] Neither Zepeda nor defendant knew who submitted the complaint.

4

garage belonged to defendant and her family.  Defendant did not move the cars from the driveway or remove the identified personal property from the garage.

Zepeda reinspected the property on September 26.  There were no cars in the driveway at the time, but the remaining conditions were not corrected.  Zepeda testified the LAHD "hold[s] the owners responsible" for ordinance violations, and the department does not cite tenants.[6]  However, plaintiff was not fined by the city in this case.

Plaintiff hired counsel to serve the three-day notice to perform covenants or quit the premises.  Safrazbekian, who works as an administrator for plaintiff's counsel, mailed a copy of the three-day notice to the LAHD on or about October 5, 2023.  Other than his testimony, Safrazbekian could not confirm the notice was served upon the LAHD.  After expiration of the notice, the vehicles were parked again on the driveway and defendant's personal property remained stored on the structural support planks in the garage.  Lourdes told plaintiff over the phone that she and defendant "were not going to move the cars anymore, that the court has given them the okay to leave the cars, and that . . . their attorney, told them not to move the cars, nor the items that were around the house."[7]

Plaintiff accepted rent payments from defendant at a time when the cars were parked on the driveway and the personal property was being improperly stored in the garage.  Plaintiff never communicated to defendant that she was permitted to park cars on the driveway or to store personal property on the structural planks in the garage, and she told defendant the cars had to be moved when she accepted a rent payment.[8]

---

[6] The LAHD does have legal authority to cite tenants under specified circumstances. (See L.A. Mun. Code, § 161.701.2.)
All section references are to the Los Angeles Municipal Code unless otherwise stated.

[7] Zepeda re-inspected the property five days before trial.  All the items had been removed from the driveway and garage, and the investigation was considered resolved at the time of trial.

[8] The court denied a defense motion for judgment on the pleadings, without explanation.

5

After the court responded to a jury inquiry,[9] the jury issued the following special verdict findings: plaintiff owned the property; defendant violated the lease as alleged in the three-day notice; the violation was a substantial breach of an important obligation under the lease; plaintiff accepted at least one rent payment from defendant after receipt of the Notice and Order to Comply, while clearly and continuously objecting to the violations; plaintiff served defendant with a LAHD statement of registration of rental units before October 6; plaintiff properly served defendant with the three-day notice; and defendant did not cure the breach within three days after service of the notice.[10]

## DISCUSSION

Timeliness of the Appeal

Plaintiff argues this court lacks jurisdiction to review the merits of the appeal as the June 6, 2024 notice of appeal was filed more than 30 days after entry of judgment on March 20, 2024, and the motions for new trial and for judgment notwithstanding the verdict did not extend the time to appeal because they were untimely filed. We agree with defendant's position that the notice of appeal was filed in a timely manner.

A notice of appeal from a final judgment must be filed on or before the earliest of three events: 30 days after the trial court clerk serves the appellant with a "'Notice of Entry' of judgment or a filed-endorsed copy of the judgment," 30 days after the appellant serves or is served with a "Notice of Entry' of judgment or a filed-endorsed copy of the judgment," or 90 days after the entry of judgment. (Cal. Rules of Court, rule 8.822(a)(1).) The judgment was entered on March 20, 2024, and the record does not reflect any service of a notice of entry of judgment by a party or by the court clerk; thus, the default 90-day rule applies. (Cal. Rules of

---

[9] The inquiry asked: "Are we understanding question #5 correctly if we think it's asking—'did Gonzalez object enough to the violation after getting notice on Aug 16 and after receiving September rent?'" (*Sic*.) The court responded, "The question does not require a finding of degree (e.g. 'enough' or 'not enough')".

[10] In accordance with these special verdict findings, the court entered judgment in favor of plaintiff. Defendant filed a motion for new trial and for judgment notwithstanding the verdict. On June 6, 2024, prior to adjudication of the motions, defendant filed a notice of appeal from the judgment. According to the register of actions, a hearing on the post-judgment motions was taken off calendar after the filing of the notice of appeal.

Court, rule 8.822(a)(1)(C).)  Defendant's notice of appeal was filed on June 6, 2024—only 78 days after entry of judgment.[11]

<u>Validity of the Three-Day Notice</u>

Defendant claims the three-day notice to perform or quit was defective, inaccurate and confusing, and "[t]he lease lacks anything that could be reasonably construed as restricting the use of the garage for storage or prohibiting parking in the driveway."  Our review of the notice is de novo.  (*Foster v. Williams* (2014) 229 Cal.App.4th Supp. 9, 13.)

To succeed on a cause of action for unlawful detainer, the lessor must plead and prove at least one of the enumerated circumstances set forth in Code of Civil Procedure section 1161 eq. seq.  (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 395.)  As applicable to this case, a tenant is guilty of unlawful detainer by continuing in possession, after failing to perform a condition or covenant of the lease, following service of written notice of at least three days demanding the performance of such condition or covenant.  (§ 1161, subd. (3).)  The lessor must strictly comply with all applicable notice requirements.  (*Eshagian v. Cepeda* (2025)  112 Cal.App.5th 433, 457-459.)

"At minimum this requires allegations that the defendant was served with a written notice, [citation], specifying the alleged breach, [citation] and unequivocally demanding possession within three days of service of the notice.  [Citation.]  Where the condition or covenant allegedly violated is capable of being performed, the notice must give the tenant the alternative of performing or quitting possession.  [Citation.]  In any case, the notice must advise the tenant of the alleged breach.  If it does not do so, the tenant cannot know whether to comply with the notice to quit or remain in possession and contest the landlord's allegations."  (*Delta Imports, Inc. v. Municipal Court* (1983) 146 Cal.App.3d 1033, 1036.)

LARSO imposes additional restrictions.  To recover possession of a rental unit when a lessee has violated a lawful covenant of the tenancy, the lessor "shall serve on the tenant a

---

[11] Plaintiff's reliance on California Rules of Court, rule 8.823 is unavailing as that rule only *increases* the ordinary time to appeal.  (Cal. Rules of Court, rule 8.823(a).)  It was unnecessary to increase the time to appeal because the notice of appeal was timely filed before expiration of 90 days after entry of judgment.  (Cal. Rules of Court, rule 8.822(a)(1)(C).)

written notice setting forth the reasons for the termination . . . [which] shall be as described in . . . Code of Civil Procedure Section[] 1161" (§ 151.09, subd. (C)), and "the termination notice must set forth specific facts to permit a determination of the date, place, witnesses and circumstances concerning the eviction reason" (*id.*, subd. (C)(1)).

In the case *sub judice*, the three-day notice specified defendant breached section 3 of the lease which prohibited her violation of any city ordinance in or about the premises. Citing the Notice and Order to Comply, the three-day notice averred that defendant violated a city ordinance, and was therefore in breach of the lease, by "storing personal property in your garage" and "blocking the pathway to and from the garage." The notice was sufficient to clearly notify defendant of the alleged breach of covenant and it identified the witnesses to the alleged violations. (§ 151.09, subd. (C)(1); *Delta Imports, Inc v. Municipal Court*, *supra*, 146 Cal.App.3d at p. 1036.) The notice was not required to cite the statutory provisions allegedly violated by defendant—only the facts underlying the alleged breaches. (See *Lee v. Kotyluk* (2021) 59 Cal.App.5th 719, 731 ["'No particular words are prescribed, and no special form is indispensable'"].)

The notice also specified what actions defendant was expected to take to cure the alleged violations and retain possession—"you must remove your personal property storage from the garage, as it is only for the parking of a vehicle" and "you must remove your vehicles so that it is not blocking the pathway. The pathway must remain free and clear." A reasonable person would understand the lease violations being alleged in the notice. The instructions to cure the alleged breaches were sufficiently clear and unequivocal such that defendant had notice she was facing imminent eviction if she refused to cure the violations. (*Eshagian v. Cepeda*, *supra*, 112 Cal.App.5th at p. 459.)

Sufficiency of the Evidence

When assessing a challenge to the sufficiency of the evidence, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a

8

determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Id*. at pp. 630-631.) "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Id*. at p. 631.) A party claiming a claim of insufficient evidence faces a "'daunting burden.'" (*Whiteley v. Philip Morris Inc*. (2004) 117 Cal.App.4th 635, 678.)

*Violation of City Ordinance*

Defendant maintains there is no substantial evidence to support the special verdict finding that *she* violated any city ordinance, because it was undisputed that *plaintiff* was the party who was cited by the LAHD for the violations.[12] Whether a tenant's acts constitute a breach of the lease is ordinarily a question of fact which will not be disturbed on appeal if supported by substantial evidence. (*Freeze v. Brinson* (1991) 3 Cal.App.4th Supp. 1, 3.)

It was undisputed that the Notice and Order to Comply, which is not in the record, identified violations of sections 12.21(A)(1)(a) and 91.8104. Section 12.21(A)(1)(a) provides, "[n]o building or structure shall be . . . maintained, nor shall any building, structure, or land be used . . . for any use other than is permitted in the zone in which such building, structure, or land is located . . . ." Section 91.8104 provides: "Every existing building, structure, or portion thereof shall be maintained in a safe and sanitary condition and good repair. The premises of every building or structure shall be maintained in good repair and free from . . . debris, rubbish, garbage, trash, . . . or other similar material."

---

[12] This section of defendant's opening brief consists of only two paragraphs, and the analysis does not "'summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient.'" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738, italics omitted.) On appeal, "we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Howard v. Owens Corning*, *supra*, 72 Cal.App.4th at p. 631.) Defendant's approach to brief writing constitutes a forfeiture of her challenge to the sufficiency of the evidence. (*Schmidlin v. City of Palo Alto*, *supra*, at p. 738.) Nevertheless, we assess whether defendant's actions or failure to act could be considered a violation of any city ordinance such that it would constitute a breach of the lease.

9

Citing section 161.701.2,[13] defendant reasons that, because LAHD had the authority, but did not cite her for the ordinance violations, she was necessarily not the party who violated the city ordinance. Defendant's analysis is unavailing. The Municipal Code makes it "unlawful for *any person* to violate any provision or fail to comply with any of the requirements of this Code." (§ 11.00, subd. (m), italics added.) The term "any person" broadly includes a tenant. There is no legal authority or provision in the lease requiring defendant to be cited or charged with a violation as a condition precedent to constitute a breach of the clause in the lease. (See, e.g., § 151.09(A)(11) [lessor may file unlawful detainer action to recover possession of a unit in order to comply with a notice to comply issued by a governmental agency].) Defendant was the proximate cause for the violation—but for defendant's actions or failure to act, plaintiff would not have received the Notice and Order to Comply. Thus, although defendant was not cited by the LAHD, there is substantial evidence to support the jury's determination that defendant breached the lease by "violat[ing] any city ordinance . . . in or about said premises."

*Materiality of the Breach*

The jury was instructed that defendant's alleged failure to perform the lease covenant "must not be trivial but must be a substantial violation of important obligations." On appeal, defendant argues there is no substantial evidence supporting the jury's special verdict finding that she committed a substantial breach of the lease, as the alleged violation "was immaterial as a matter of law when the landlord suffered no injury due to the breach." We do not agree.

"'[A] lease may be terminated only for a substantial breach thereof, and not for a mere technical or trivial violation.'" (*Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 81 (*Boston*).) "'"The law sensibly recognizes that although every instance of noncompliance with

---

[13] Section 161.701.2 authorizes the LAHD to issue an order to comply and to pursue enforcement remedies against "any tenant determined to have violated Section 91.8102.2 or . . . Civil Code Section 1941.2 . . . ." Section 91.8102.2 makes it unlawful for a tenant of a dwelling unit to fail to keep the dwelling unit free from an accumulation of debris, filth, rubbish and garbage. Civil Code section 1941.2 excuses a lessor from the duty to repair a dilapidation if the tenant is in substantial violation of certain obligations and the tenant's violation substantially contributes to the existence of the dilapidation or interferes with the lessor's obligation to repair.

a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated. [Citations.] . . . California courts allow termination only if the breach can be classified as 'material,' 'substantial,' or 'total.'"'" (*NIVO 1 LLC v. Antunez* (2013) 217 Cal.App.4th Supp. 1, 5 (*NIVO*).) A condition in a contract involving a forfeiture is strictly interpreted against the party for whose benefit it is created. (Civ. Code, § 1442.) The question of whether a breach of a lease obligation is a material breach is ordinarily a question of fact, but if reasonable minds cannot differ on the issue of materiality, then the issue is resolved as a matter of law. (*Boston*, *supra*, at p. 87.)

In *NIVO*, the tenant was evicted for breach of a lease covenant requiring the tenant to maintain renter's insurance for her personal property. (*NIVO*, *supra*, 217 Cal.App.4th at p. Supp. 3.) The trial court entered judgment in favor of the tenant, finding her failure to maintain insurance was not a material breach of the lease. (*Ibid.*) Affirming, this court concluded there was substantial evidence to support the findings of immateriality when there was no evidence the tenant had any property worth insuring, renter's insurance would only benefit the tenant and not the landlord, and the breach was selectively enforced by the lessor only against certain "'problem[atic]'" tenants. (*Id.* at p. Supp. 5.)

In *Boston*, the tenant was evicted for violating a lease clause requiring him to maintain renter's insurance. (*Boston*, *supra*, 245 Cal.App.4th at pp. 78-79.) The trial court entered judgment in favor of the lessor, finding the forfeiture clause of the lease allowed the lessor to terminate the tenancy for any breach regardless of its materiality. (*Id.* at pp. 79-80.) The Court of Appeal reversed, holding the text of LARSO and its underlying public policy goals required a material breach to enforce a forfeiture clause in a residential lease. (*Id.* at pp. 80-85.) The court reasoned, "[t]he primary purpose of renter's insurance is to protect the tenant, not the landlord. As such, [lessor] has little ground to argue that [tenant's] failure to obtain insurance harmed it. For example, [lessor] does not argue [tenant] made claims against it that should have been covered by renter's insurance but were not because [tenant] lacked it. Instead, [lessor] argues it was harmed because there was a chance [tenant's] noncompliance encouraged other tenants' noncompliance. In the absence of evidence of actual harm, the chance [tenant's]

11

temporary noncompliance incited other tenants to not comply with their insurance obligations is insufficient to demonstrate harm justifying forfeiture." (*Id*. at p. 87.)

The *NIVO* and *Boston* cases do not support defendant's prayer for reversal of the judgment. First, unlike *NIVO* and *Boston*, there is no evidence plaintiff manufactured the lease violations as a furtive basis for eviction. (E.g., *Boston*, *supra*, 245 Cal.App.4th at p. 85; e.g. *NIVO*, *supra*, 217 Cal.App.4th at p. Supp. 5.)

Second, the *NIVO* and *Boston* decisions emphasized that the lessors suffered no harm because the insurance clauses in each of the leases were intended to protect the tenants. (*Boston*, *supra*, 245 Cal.App.4th at p. 87; *NIVO*, *supra*, 217 Cal.App.4th at p. Supp. 5.) Contrarily, section 3 in defendant's lease was presumably intended to protect both the property and plaintiff from incurring potential civil or criminal liability for any illegality occurring in or about the rented premises.

Third, *NIVO* and *Boston* are distinguishable because there was an actual risk of loss to plaintiff, and the violations were not trivial. The ordinances cited in the Notice and Order to Comply were enacted by the city to "promote health, safety, and the general welfare" (§ 12.02), and to "establish minimum standards to regulate and encourage the proper maintenance and use of existing buildings, structures and premises in order to safeguard life, limb, health, property and public welfare" (§ 91.8101.1). Violations of the ordinance exposed plaintiff to potential civil and even criminal sanctions. (See § 11.00, subds. (l)-(m).) Zepeda testified the wood beams in the garage were designed to secure the structure from collapsing, the beams were warping due to the weight of defendant's property being stored on them, there was a risk of collapse and potential injury, and the cars blocking the shared driveway posed a danger in the event of an emergency.

It would be absurd if the lease was interpreted in a manner that prevented plaintiff from curing the Notice and Order to Comply and instead required plaintiff to wait until she was assessed penalties or incurred civil liability, before serving a notice to cure the violation or quit the premises. (Civ. Code, § 1638 [favoring interpretation of a contract manner that avoids absurd results]; *Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1521 [same].) Courts seek to avoid interpreting a contract in a manner that

prevents the lessor from complying with the law. (See Civ. Code, § 1643; see also *Glenn R. Sewell Sheet Metal, Inc. v. Loverde* (1969) 70 Cal.2d 666, 672). We decline to adopt defendant's no harm, no foul reasoning.

Jury Instructions

The propriety of jury instructions is a question of law subject to independent review. (*A.H. v. Tamalpais Union High School Dist.* (2024) 105 Cal.App.5th 340, 349.) "'A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by [the party] which is supported by substantial evidence.' [Citation.] Substantial evidence necessary to support a jury instruction is '". . . evidence from which a jury composed of reasonable [persons] could have concluded that the articular facts underlying the instruction did exist."'" (*Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 465-466.)

*Substantial Breach*

Defendant asserts the court erred by refusing her request to instruct the jury with a definition of a "substantial breach" of the lease covenant.[14] The trial court found the model instruction in Judicial Council of California Advisory Committee on Civil Jury Instructions (CACI) No. 4304 was appropriate, which provided in relevant part: "[defendant's] failure to perform the requirements of the rental agreement must not be trivial but must be a substantial violation of important obligations." The instruction given followed *Boston*, *supra*, 245

_____

[14] The instruction proposed by defendant would have told the jury that: "A substantial breach occurs if Plaintiff can show that she was injured or damaged by way of Defendant's breach of the rental agreement. [¶] Plaintiff must prove actual harm, not merely speculation about the chance of harm, as a result of Defendant's breach of the rental agreement. [¶] . . . [¶] 'Although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated. California courts allow termination only if the breach can be classified as "material," "substantial," or "total."' . . . 'Nowhere will change be tolerated, however, if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract. . . . The question is one of degree, to be answered, if there is doubt, by the triers of the facts. . . . We must weigh the purposes to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence. . . . [T]he law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture.'"

Cal.App.4th at p. 81, by requiring the jury to determine whether the violation was "substantial" and not "trivial."

In this context, the terms "trivial" and "substantial" were commonly understood and did not require definitions in the instructions. (See *Wilson v. Rancho Sespe* (1962) 207 Cal.App.2d 10, 22.) "A party is not entitled to have the jury instructed in any particular phraseology and may not complain on the ground that his requested instructions are refused if the court correctly gives the substance of the law applicable to the case." (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335.)

Even assuming the court erred by refusing to adopt defendant's definition of a "substantial violation" in the instructions, it was not prejudicial. (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13; *Harb v. City of Bakersfield* (2015) 233 Cal.App.4th 606, 617-618.) As assessed in depth *ante*, the evidence of a substantial breach of the lease was overwhelming such that a reasonable juror could not have deemed defendant's breach to be immaterial. There is no evidence the jury was misled or confused by this instruction. Consequently, we conclude there is no reasonable probability defendant would have achieved a more favorable result absent the alleged instructional error. (See *ibid*.)

*Filing of the Notice with LAHD*

Defendant argues the trial court prejudicially abused its discretion by refusing defendant's proposed instruction regarding the defense that plaintiff violated the LARSO by failing to timely "file" the three-day notice with the LAHD. According to defendant, the requirement to file the notice with the LAHD must be affirmatively proven by plaintiff as a condition precedent to pursuing the unlawful detainer action. Not so.

In any action to recover possession of a rental unit, the landlord must serve the tenant a written notice setting forth the reasons for the termination and "[a] copy of any written notice terminating a tenancy shall be filed with the [LAHD] within three business days of service on the tenant." (§ 151.09, subd. (C)(9).) The service requirement in section 151.09, subdivision (C)(9) is an affirmative defense. (§ 151.09, subd. (E); *Chun v. Del Cid* (2019) 34 Cal.App.5th 806, 816.) As an affirmative defense, defendant had the burden to prove that plaintiff failed to

14

comply with the service requirement. (Evid. Code, § 500; *California Valley Properties LLC v. Berlfein* (2020) 48 Cal.App.5th Supp. 1, 7.)

Plaintiff testified that her counsel submitted the three-day notice to the LAHD. Safrazbekian, an employee of plaintiff's attorney, testified that he personally prepared the envelope and its contents and mailed the three-day notice to the LAHD. He did not have a confirmation receipt. Defendant did not present any evidence to contradict Safrazbekian's testimony that the notice was mailed to the LAHD. Instead, it was defendant's position that because plaintiff had no documentary evidence to support the testimony of Safrazbekian, she was entitled to an instruction on the affirmative defense. The trial court refused defendant's request to instruct the jury, citing defendant's failure to cite any evidence adduced at trial that plaintiff failed to comply with the notice requirement under section 151.09(E).

Defendant claims "[t]he trial court conflated some aspects of the LARSO that are expressly denoted as affirmative defenses with this requirement that is part of the Plaintiff's prima facie to have a valid basis to evict." Defendant's analysis is incorrect. The service requirement in subdivision (C)(9) of section 151.09 was indisputably an affirmative defense, not part of plaintiff's prima facie case. (§ 151.09, subd. (E); *Chun v. Del Cid*, *supra*, 34 Cal.App.5th at p. 816.) The only evidence in the record was that Safrazbekian mailed the three-day notice to the LAHD. The mailing of the notice was sufficient to satisfy the service requirement pursuant to section 11.00, subdivision (i): "**Notices, Service of**. Whenever a notice is required to be given under this Code, unless different provisions in this Code are otherwise specifically made applicable, the notice may be given . . . by deposit[ing] in the United States Mail in a sealed envelope, postage prepaid, addressed to the person to be notified at the person's last known business . . . address . . . ." (§ 11.00, subd. (i).)

Plaintiff had no obligation to present documentary proof to support Safrazbekian's testimony that the notice was mailed to the LAHD. (See Evid. Code, § 411 [testimony of a single credible witness is sufficient to prove a fact].) There was no evidence from which a reasonable juror could have found that plaintiff failed to file the three-day notice with the LAHD. Therefore, the proposed instruction was unsupported by substantial evidence and the

court did not err by rejecting defendant's proposed instruction. (See *Bay Guardian Co. v. New Times Media LLC*, *supra*, 187 Cal.App.4th at pp. 465-466.)

Waiver by Acceptance of Rent

Defendant maintains "[t]he trial court erred in refusing to instruct the jury on the presumption attached to acceptance of rent, and by framing the landlord's knowledge of the conditions constituting a breach as somehow only arising once the landlord was cited by the LAHD," and "[t]he verdict form was incorrect and misleading, making it seem that waiver could only be found based on the landlord's knowledge that the conditions constituted a violation, rather than their knowledge of the conditions themselves." Defendant also contends "[n]o substantial evidence could support the finding that [p]laintiff informed the tenant that acceptance would not waive the breach."

Waiver—an intentional relinquishment of a known right—is a question of fact reserved for the jury which may be implied through conduct displaying an intention to waive. (*Gould v. Corinthian Colleges, Inc*. (2011) 192 Cal.App.4th 1176, 1179.) "If a landlord has full knowledge of all pertinent facts, acceptance of rent or other benefits after breach of a covenant constitutes a waiver of the breach that precludes the landlord from declaring forfeiture of the lease by reason of the breach." (*Runnymede Holdings, LLC v. Foster* (2023) 96 Cal.App.5th Supp. 1, 11.) "While waiver is a question of intent, the cases have required some positive evidence of rejection on the landlord's part . . . to overcome the presumption that tender and acceptance of rent creates." (*EDC Associates Ltd v. Gutierrez* (1984) 153 Cal.App.3d 167, 170.) The burden is on the tenant asserting the defense of waiver "'"to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver."'"" (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd*. (1994) 30 Cal.App.4th 54, 60.)

As relevant, the jury was instructed: "[Defendant] claim[s] that [plaintiff] is not entitled to evict her because [plaintiff] accepted payment of rent after the three-day notice period had expired or [defendant] had violated the lease/rental agreement. To succeed on this defense, [defendant] must prove, by clear and convincing evidence, that [plaintiff] demanded or accepted a payment of rent after [plaintiff] knew that [defendant] had violated the rental

16

agreement. [¶] If [defendant] has proven that she paid rent, then she has the right to continue occupying the property unless [plaintiff] proves that [plaintiff] clearly and continuously objected to the violation of the rental agreement." (CACI No. 4324.)

The instruction correctly informed the jury that it was defendant's burden to prove the defense of waiver by clear and convincing evidence. (See *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd*., *supra*, 30 Cal.App.4th at pp. 60-61.) This instruction was not confusing or inaccurate. While the instruction did not include the term "presumption," the jury was correctly instructed on the principles underlying the presumption—that if the jury found plaintiff accepted rent from defendant after the breach of the lease agreement, then the burden of producing evidence shifted to plaintiff to prove she sufficiently objected to the lease violation. Defendant was not entitled to any particular phraseology in the instruction. (*Hyatt v. Sierra Boat Co*., *supra*, 79 Cal.App.3d at p. 335.)

Defendant further contends the special verdict form erroneously implied "that the defense of waiver somehow only applies from when the landlord was cited by the LAHD rather than when plaintiff knew of the conditions constituting the breach. This was wrong. Plaintiff testified that he knew about the cars parked in the driveway and the storage in the garage since 2016. [Citation.] However, the verdict form only inquired into a waiver 'after receipt of the August 16, 2023, Notice and Order to Comply.' [Citation.] In effect, the trial court suggested that a landlord can play ignorant of building codes and act like they only knew of a violation when cited."

When the court reviewed the final instructions with counsel, defense counsel agreed to the language of the special verdict form concerning waiver. In response to an objection by plaintiff, defense counsel asked, "that the [special verdict] question remain as written because it's consistent with the waiver instruction." Defendant forfeited this contention by failing to object on this basis at trial. (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 277; *Jensen v. BMW of North America, Inc*. (1995) 35 Cal.App.4th 112, 131, disapproved on another ground in *Rodriguez v. FCA US LLC* (2024) 17 Cal.5th 189, 205.)

We also reject defendant's related sub-argument challenging the sufficiency of the

17

evidence supporting the jury's special verdict finding of no waiver." Plaintiff testified that when she accepted rent from defendant after receiving the Notice and Order to Comply in August 2023, she told defendant the cars were not allowed to remain parked on the driveway and that they had to be moved. When asked "when was the last time you accepted rent from [defendant]," plaintiff testified "it was back in, I guess, 2023" but without specifying the month. In a special interrogatory response read to the jury, plaintiff averred "'the date of the last rent payment [she] accepted from [defendant]'" was on September 6, . . ." Defendant does not identify, and this court has not located any definitive evidence in the record that plaintiff accepted rent payments from defendant after service of the three-day notice.

While the evidence as to when plaintiff stopped collecting rent was muddled, the jury could reasonably find that plaintiff avoided a waiver by clearly objecting to the lease violations once she served defendant with the three-day notice. (See, e.g., *Thriftimart, Inc. v. Me & Tex* (1981) 123 Cal.App.3d 751, 753-754 [lessor's acceptance of rent coupled with protest was not a waiver]; cf. *EDC Associates Ltd v. Gutierrez*, *supra*, 153 Cal.App.3d at pp. 170-171 [landlord's acceptance of rent following service of three-day notice constituted a waiver]; cf. *Kern Sunset Oil Co. v. Good Roads Oil Co*. (1931) 214 Cal. 435, 440-444 [five years of acceptance of rent following breach of lease was a waiver].) Doubtful cases are resolved against a waiver. (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd*., *supra*, 30 Cal.App.4th at p. 60.) Substantial evidence supports the jury's rejection of the waiver defense.

## DISPOSITION

The judgment is affirmed. Plaintiff to recover costs on appeal.

_____
P. McKay, P. J.

We concur:

_____                    _____
Ricciardulli, J.                                   Guillemet, J.

18